IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,      )
       )
      Plaintiff,      )
       )
vs.      )    **Case No. 22-00139-07-CR-W-BCW**
       )
STEPHEN MANNING,      )
       )
      Defendant.      )

## REPORT AND RECOMMENDATION

Pending is Defendant's Motion to Suppress filed on August 31, 2023. Doc. 298. The Government filed Suggestions in Opposition on September 21, 2023. Doc. 309. Defendant filed his Reply on October 5, 2023. Doc. 313. An evidentiary hearing was held on December 18, 2023. Doc. 353. For the reasons set forth below, the undersigned recommends Defendant's motion to suppress be **DENIED**.

## I.    BACKGROUND

On April 5, 2023, the grand jury returned a superseding indictment charging Defendant with conspiracy to distribute over five kilograms of cocaine, over 500 grams of methamphetamine, and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 (Count One); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Nine). Doc. 236.[1]

In the pending motion, Defendant challenges a traffic stop and subsequent inventory search of a red Jaguar F-Pace on October 21, 2020. Doc. 298 at 1.[2] He argues the traffic stop was pretextual

---

[1] The superseding indictment also sets forth charges against sixteen other individuals. Doc. 236.

[2] The firearm discovered during the inventory search is the subject of Count Nine in the superseding indictment. Doc. 236 at 5-6; Doc. 309 at 1.

and police lacked probable cause to arrest him for tampering in the first degree. *Id*. at 1-10. He contends all evidence obtained from the inventory search should be suppressed as fruit of the poisonous tree. *Id*.

On December 18, 2023, the undersigned held an evidentiary hearing. Doc. 353; Doc. 361 (Transcript) (hereinafter "Tr."). Defendant was present and represented by CJA counsel Linda Koch Marshall. *Id*. The Government was represented by Assistant United States Attorney Matthew Moeder. *Id*. At the hearing, two witnesses testified: Detective John Straubel and Officer Chase Kuehl. *Id*. In addition, fourteen exhibits were admitted into evidence. Docs. 353-54.

## II.    FINDINGS OF FACT

Based on the evidence adduced at the evidentiary hearing, the undersigned submits the following findings of fact:

1.      Between August and October 2020, EAN Holdings LLC (hereinafter, "EAN")[3] operated a rental car company in Omaha, Nebraska. Tr. at 12-13; Gov't Ex. 12 at 1. EAN owned a red 2020 Jaguar F-Pace with Minnesota license plate DZZ204 (hereinafter, "Jaguar"). Tr. at 12-13, 72; Gov't Ex. 12 at 1. EAN made the Jaguar available for rental. Tr. at 12-13; Gov't Ex. 12 at 1.

2.      On August 10, 2020, EAN rented the Jaguar from its Omaha location to an individual named Kathleen Emdee. Tr. at 13; Gov't Ex. 12 at 1. Per the rental agreement, the Jaguar was to be returned by September 9, 2020. Tr. at 13; Gov't Ex. 12 at 1. The Jaguar was never returned to EAN. Tr. at 13; Gov't Ex. 12 at 1. On September 29, 2020, EAN reported to law enforcement the Jaguar was considered a "failure to return." Gov't Ex. 12 at 1.

---

[3] The parties stipulated that EAN Holdings LLC is the legal entity for Enterprise Rent-A-Car, Alamo Car Rental, and National Car Rental. Gov't Ex. 12 at 1. To avoid confusion, the Court, throughout this report, refers to EAN whenever a witness referred to EAN, Enterprise, or Enterprise Leasing.

2

3.      Between August and October 2020, Detective John Straubel and other law enforcement officers with the Federal Bureau of Investigation ("FBI") and the Kansas City Police Department ("KCPD") conducted surveillance of a residence located at 4307 East 104th Street, Kansas City, Missouri (hereinafter, "residence").[4]  Tr. at 7-10.  Salvador Valdivia[5] lived at the residence.  Tr. at 7-10.  Valdivia and his associates, including Defendant, were suspects in an ongoing narcotics investigation.  Tr. 7-8.

4.      During the surveillance, investigators frequently observed Defendant at Valdivia's residence.  Tr. at 39-40.  On multiple occasions, law enforcement witnessed Defendant carrying a backpack.  Tr. at 40, 43-44, 46-47; Def.'s Ex. I.  Additionally, investigators observed the Jaguar at the residence between August and October 2020.  Tr. at 10-11; Gov't Ex. 12 at 1-2; Doc. 284 at 7.[6] Detective Straubel witnessed Defendant and at least two other individuals operate the Jaguar.  Tr. at 11-12; Doc. 284 at 7, 15-16.  During their investigation, the officers confirmed EAN owned the Jaguar, it was rented to a female in Omaha, it had not been rented by Defendant or Valdivia, and it had not been returned as scheduled.  Tr. at 12-13.  Detective Straubel did not recognize the name of the renter of the vehicle (Katherine Emdee) and was not aware of her being associated with Defendant or Valdivia.  Tr. at 13.

**Traffic Stop and Arrest**

5.      On October 21, 2020, at approximately 9:22 a.m., EAN reported the Jaguar stolen to the Omaha, Nebraska Police Department (hereinafter, "Omaha PD").  Tr. at 16; Gov't Ex. 12 at 2.

---

[4] Detective John Straubel is a police officer with the KCPD and a task force officer with the FBI.  Tr. 6-7.  For eleven years, he served as a patrol officer.  *Id.*  For three years, he was a detective in the Property Crimes Unit.  *Id.*  During his involvement in this matter, Detective Straubel was assigned to the Gang Squad with both KCPD and the FBI.  *Id.*

[5] Valdivia is a codefendant in this matter.  Doc. 236.

[6] Defendant's Exhibit A is the transcript from Defendant's May 16, 2023 detention hearing.  *Compare* Doc. 284 *with* Doc. 298-1.  To avoid confusion, the Court cites to the transcript appearing at Document 284 on the court docket.

3

6.      At approximately 10:15 a.m., Detective Straubel, who was surveilling the residence, observed the Jaguar parked in the driveway. Tr. at 8, 13-14, 16-17, 38.

7.      At approximately 11:19 a.m., KCPD received official confirmation from the Omaha PD that the Jaguar was reported stolen earlier that morning.[7] Tr. at 17-18; Def.'s Ex. B at 1. KCPD's computer system also confirmed the vehicle was listed as stolen.[8] Tr. at 18-19; Def.'s Ex. B at 1.

8.      Detective Straubel contacted tactical officers, including Officer Chase Kuehl,[9] for assistance in conducting a traffic stop to recover the stolen Jaguar. Tr. at 20-21, 37-38, 55-57. Detective Straubel explained he generally does not conduct arrests or traffic stops when he is acting in a covert capacity because he is not properly equipped, he is not in uniform, and he was not in a police car with lights or sirens. Tr. at 14-16, 54-55. Officers acting in a covert capacity typically contact tactical officers to conduct arrests and traffic stops. Tr. at 15, 20-21, 53-54. According to Detective Straubel, he would not have had tactical officers come to the residence because the vehicle may have already left the residence by the time of their arrival, and he would not have wanted to conduct a stop at the residence because of safety reasons. Tr. at 20-21, 37-38.

9.      The roles and responsibilities of tactical officers include high-risk and fugitive apprehensions, investigative support, patrol support, and execution of high-risk search warrants. Tr. at 53. Officer Kuehl explained tactical officers are the enforcement arm for detectives in KCPD's Special Investigations Divisions, meaning tactical officers effectuate the arrests and conduct traffic

---

[7] Detective Straubel anticipated the Jaguar was going to be reported stolen because he had been informed the car had not been returned. Tr. at 38-39. However, he explained law enforcement was not going to act until the vehicle was officially reported as stolen. Tr. at 38-39.

[8] Detective Straubel explained KCPD's computer system communicates with other law enforcement databases, and as such, it would reflect a stolen vehicle reported out of Omaha, Nebraska. Tr. at 19.

[9] Officer Kuehl has been employed with KCPD for seven and a half years serving as a patrol officer and as a tactical enforcement officer. Tr. at 51-52.

4

stops.  Tr. at 53-54.  On-duty tactical officers wear a uniform and use police vehicles equipped with emergency lights and sirens.  Tr. at 54-55.

10.     At approximately 11:30 a.m., the Jaguar left the residence.  Tr. at 21, 36-37, 48; Def.'s Ex. B at 1.  Detective Straubel did not know who was driving or occupying the vehicle.  Tr. at 22, 48-49.  The undercover investigators followed the Jaguar for roughly six miles.  Tr. at 22, 37.

11.     At around 11:40 a.m., the Jaguar parked on the west side of an apartment parking lot located at 74th and Main Street in Kansas City, Missouri.  Tr. at 22-23; Def.'s Ex. B at 1.  Detective Straubel observed a black female exit the Jaguar's driver seat and enter a different vehicle.  Tr. at 23, 49-50; Def.'s Ex. B at 1; Doc. 284 at 9.  Defendant then exited the Jaguar's passenger seat and entered the driver's seat.  Tr. at 23, 25, 49-50; Def.'s Ex. B at 1-2; Doc. 284 at 9.  This was the first time Detective Straubel observed Defendant on October 21, 2020.  Tr. at 23.  Less than two minutes after the Jaguar stopped at the parking lot, Defendant drove the Jaguar out of the lot, and the investigators followed.  Tr. at 23-24.  According to Detective Straubel, law enforcement did not stop the Jaguar in the apartment parking lot because tactical officers had not yet arrived, the location was congested, there were two routes in and out of the parking lot, and houses surrounded the area.  Tr. at 23-24.

12.     At approximately 11:45 a.m., Defendant arrived in the area of East 73rd Street and Flora.  Tr. 25, 57-58, 79, 91-92; Def.'s Ex. K; Def.'s Ex. B at 2.  Officer Kuehl and other tactical officers moved into the area and conducted a traffic stop on the Jaguar.  Tr. 26, 57-60; Gov't Ex. 3 at 3; Def.'s Ex. B at 2.  The stop occurred near 73rd Street and Wayne.  Tr. at 92-93.  There were no outward signs the vehicle had been stolen, such as broken windows or a broken steering column.  Tr. at 81; Doc. 284 at 8.

13.     Defendant was directed to exit the Jaguar, and he complied.  Tr. at 60-61, 80.  He was placed under an investigative arrest[10] for operating and possessing a stolen automobile.[11]  Tr. 26, 31-32, 34, 61-62; Gov't Ex. 3 at 3; Def.'s Ex. B at 2.

## Towing of the Jaguar

14.     If a vehicle is towed pursuant to a custodial arrest, KCPD's Policy for Towing/Protective Custody of Vehicles and Contents ("KCPD's Tow Policy") requires officers to conduct a "complete content inventory of the interior, engine compartment, and trunk . . . to prevent any article of valuable property from being overlooked."  Gov't Ex. 4 at B-1[12]; Tr. at 62-63.  A "content inventory" is defined as a "detailed inventory and listing of items located inside of a vehicle being towed . . . ."  Gov't Ex. 4 at 1.  When permitted in policy, "the content inventory allows the opening of locked compartments and containers to determine content."  Gov't Ex. 4 at 1.  "A content inventory will occur only after members have made a determination to tow the property."  Gov't Ex. 4 at 1.  The policy pertaining to a vehicle towed after a custodial arrest specifically provides that a content inventory permits the search of closed compartments and containers within the vehicle.  Gov't Ex. 4 at B-1.

15.     KCPD's Tow Policy also provides that "[v]ehicles will be towed when the vehicle . . . is known or believed to have been used in the commission of a crime."  Tr. at 63-64; Gov't Ex. 4 at A-1.  Specific provisions pertain to stolen vehicles.  *See* Gov't Ex. 4 at A-7.  If a vehicle is stolen outside of Kansas City but recovered within the city, the policy states KCPD officers "will not

_____

[10] Detective Straubel stated there is no difference between an arrest and an investigative arrest.  Tr. at 34.  He further explained Defendant was placed under investigative arrest for possessing and operating a stolen vehicle, which allowed law enforcement to conduct further investigation.  Tr. at 34.  However, Defendant was not ultimately charged with possessing or operating a stolen automobile.  Tr. at 34.

[11] Based on his experience, Detective Straubel testified officers typically arrest an individual operating a stolen vehicle.  Tr. at 29-30.  In the more than 100 stolen vehicle cases in which he was involved, Detective Straubel could not recall any instance where the driver of a stolen automobile was not arrested.  Tr. at 29-30.

[12] References to pages prefaced with "A" refers to Annex A to KCPD's Tow Policy.  Similarly, citations to pages prefaced by "B" refer to Annex B to KCPD's Tow Policy.

process outside stolen vehicles unless: (a) [t]he vehicle was used in the commission of a felony within the jurisdiction of Kansas City, Missouri[, or] (b) [o]ther special circumstances exist." Tr. at 65; Gov't Ex. 4 at A-7.

16.     According to Officer Kuehl, KCPD towed the Jaguar because Defendant had been placed in a custodial arrest and because the vehicle was a stolen automobile used in the commission of a felony offense within Kansas City – i.e., tampering with a motor vehicle in the first degree.[13] Tr. 60-65, 88-89; Gov't Ex. 5.

17.     Pursuant to KCPD's Tow Policy, "[w]hen a vehicle ha[s] been used in a felony and recovered within the jurisdiction of Kansas City, Missouri, members will . . . [c]ontact the appropriate investigative element" which will "determine if an investigative 'hold' will [be] placed on the vehicle." Tr. at 66; Gov't Ex. 4 at A-7. The policy further specifies members will "[p]rocess the vehicle, as instructed by the respective investigative element, advising them of any locked compartments." Tr. at 66; Gov't Ex. 4 at A-7.

18.     KCPD's Tow Policy instructs that if a vehicle is stolen outside of, but recovered within Kansas City and it is drivable, the vehicle "may be released to the owner at the recovery location unless" the outside agency who reported the vehicle stolen "requests a hold," a "hold" is noted in the outside agency's computer entry, or the vehicle's owner cannot respond to the recovery location for timely removal. Tr. at 67-69; Gov't Ex. 4 at A-8. When a vehicle is not released to the owner, it is towed, a tow-in report is completed, and the outside agency is notified "as needed." Tr. at 70-71; Gov't Ex. 4 at A-8.

---

[13] Officer Kuehl explained that tampering in the first degree is the unlawful operation or possession of a vehicle without the owner's consent. Tr. at 61; *see also* Mo. Rev. Stat. § 569.080.1(2).

7

19.     According to Detective Straubel and Officer Kuehl, the investigative element advised the officers not to place an investigative hold on the Jaguar.[14] Tr. 27-28, 66.  In addition, Omaha PD did not request a hold on the Jaguar, and a hold was not noted in its computer entry.  Tr. at 67-68, 72-73.  Officer Kuehl did not believe the Jaguar's owner could remove the vehicle in a timely manner because the vehicle was stolen approximately three hours away from the recovery location.[15]  Tr. at 68-69.  The officers ordered a tow of the vehicle and completed a tow-in report.  Tr. 66-67, 69-70; Gov't Ex. 5.

### Inventory Search of the Jaguar

20.     The officers inventoried the items inside the Jaguar and noted items without evidentiary value – i.e., trash, clothing, white backpack, brown bag, and phone cords – on the tow-in form.  Tr. at 69-78; Gov't Ex. 5; Gov't Ex. 11.  These items were left inside the vehicle.  Tr. at 75.

21.     Three cell phones were also found in the Jaguar.  Tr. at 47-48, 89-90; Gov't Ex. 8; Def.'s Ex. B at 2.  All three cell phones were deemed to be Defendant's personal property and were provided to detention staff to hold until his release.  Tr. at 47-48, 97-98; Def.'s Ex. B at 2.

22.     Law enforcement also found several items that were deemed contraband or had evidentiary value:[16] a firearm, ammunition, digital scale, a green leafy substance determined to be marijuana, a white substance later determined to be lidocaine,[17] THC gummies, a prescription pill

---

[14] Detective Straubel explained an investigative hold may be placed on a vehicle when it is "used in a crime," and law enforcement wants "to apply for a search warrant for evidence."  Tr. at 27; *see also* Gov't Ex. 4 at 1 (defining an investigative hold as a "hold authorized by an investigative element on a vehicle which was used in a crime.").

[15] "Timely removal" is defined as the "[r]easonable amount of time a member has to allow the arrestee or person responsible for the vehicle to arrange for the removal of the vehicle."  Tr. at 68-69; Gov't Ex. 4 at 2.  The definition specifies "[m]embers must use discretion under the circumstances (e.g., whether the arrestee is cooperating with the members, the members have waited more than thirty (30) minutes, call volume, etc.)."  Tr. at 68-69; Gov't Ex. 4 at 2.

[16] Officer Kuehl defined items of evidentiary value as anything potentially used in a crime.  Tr. at 70.

[17] A field test of the white powder indicated the presence of cocaine.  Tr. at 74; Doc. 284 at 5.  But a subsequent confirmatory test demonstrated the field test result was incorrect, and cocaine was not present in the white powder.  Tr. at 74-75; Doc. 284 at 5-6.

8

bottle bearing Defendant's name, and United States currency. Tr. at 74-78, 96, 102-03; Gov't Exs. 3, 8-10; Doc. 284 at 5-6, 12. The firearm and prescription bottle were some of the items found in a red backpack located on the Jaguar's front passenger floorboard. Tr. at 77. Defendant Manning was charged with being a felon in possession of the firearm law enforcement recovered during the inventory search. Doc. 236; Doc. 284 at 5.

## III.    DISCUSSION

Defendant asserts the officers made an unconstitutional, pretextual stop of the Jaguar, and they lacked probable cause to arrest him for tampering in the first degree. Doc. 298 at 1-9; Doc. 313 at 1-4, 8-10. In addition, he argues the warrantless search of the backpacks was illegal. Doc. 298 at 9-10; Doc. 313 at 6-8. Finally, he avers all evidence obtained during the Jaguar's inventory search should be suppressed as fruit of the poisonous tree. Doc. 298 at 9-10. The Government opposes Defendant's motion, arguing Defendant does not have standing to contest the search of the stolen vehicle. Doc. 309 at 8-9. Even if Defendant has standing, the Government contends the traffic stop was supported by reasonable suspicion, and law enforcement had probable cause to arrest Defendant for driving a stolen vehicle. *Id*. at 4-5. The Government also maintains the search of the Jaguar was proper under the inventory search exception to the warrant requirement. *Id*. at 8-11.

### A.    Standing

The Government contends Defendant did not establish his lawful possession of the Jaguar, and thus, he cannot challenge the search of the vehicle. Doc. 309 at 8-9. Defendant asserts he had a reasonable expectation of privacy in the Jaguar. Doc. 313 at 4-6. He also contends if the Court finds he lacked standing to challenge the Jaguar's search, he still had a reasonable expectation of privacy in the backpacks located in the Jaguar. *Id*.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. To seek relief for an unconstitutional search, a person must have a cognizable Fourth

9

Amendment interest in the place searched, a concept often referred to as Fourth Amendment "standing." *Byrd v. United States*, 584 U.S. 395, 410-11 (2018). An individual asserting a Fourth Amendment challenge must demonstrate a personal and reasonable expectation of privacy in the place searched. *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) (citation omitted). A defendant who moves to suppress evidence has the burden of proving he had a legitimate expectation of privacy in the area searched or the item seized. *United States v. Sierra-Serrano*, 11 F.4th 931, 933 (8th Cir. 2021). To meet this burden, the individual must establish both a subjective expectation of privacy in the place searched and that his or her subjective expectation was objectively reasonable. *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014).

"Fourth Amendment rights are personal and may not be asserted vicariously." *Davis*, 943 F.3d at 1132 (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). A defendant has no standing to claim a search was illegal if he "fails to prove a sufficiently close connection to the relevant places or objects searched." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (citation omitted). When determining whether a defendant has standing, courts consider several factors including ownership; possession and/or control of the area searched or the item seized; historical use of the property or item; the ability to regulate access; the totality of the circumstances surrounding the search; whether there was a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the facts of the case. *Id*. (citation omitted).

**(1)     Standing to Challenge Search of the Jaguar**

EAN owned the Jaguar and rented it to a female driver in Omaha, Nebraska, on August 10, 2020. Detective Straubel was not familiar with the female driver and had no knowledge of her association with Defendant or Valdivia. The Jaguar was not rented to Defendant or Valdivia. The Jaguar was not returned to EAN on or after the September 9, 2020 deadline in the rental agreement. On September 29, 2020, EAN reported the vehicle as a "failure to return." On October 21, 2020,

10

prior to the stop in question, EAN reported the vehicle as stolen. The detectives observed the Jaguar being operated by both Defendant and Valdivia while conducting the narcotics investigation.

Defendant contends he has Fourth Amendment standing to challenge the search of the Jaguar and its contents because the evidence showed he had possession and control over the vehicle. Doc. 313 at 5. He claims law enforcement observed him as one of the Jaguar's "primary drivers" during surveillance conducted in September and October 2020. *Id*. He contends that because he had keys to start the car, it is reasonable to infer someone must have given him permission to use the car. *Id.*

### a. Lawful Possession

When a vehicle search is at issue, the central inquiry for Fourth Amendment standing often turns on the concept of "lawful possession." *Byrd*, 584 U.S. at 409. The Eighth Circuit has determined the driver of a vehicle may have a reasonable expectation of privacy therein if the driver shows he or she was in "lawful possession" of that vehicle. *United States v. White*, 962 F.3d 1052, 1054 (8th Cir. 2020). When the driver is not the owner of the vehicle, nor listed on a rental car's agreement, a reasonable expectation of privacy may still be shown if the driver proves the vehicle's lawful owner or renter gave the person permission to drive it. *See United States v. Bettis*, 946 F.3d 1024, 1027-29 (8th Cir. 2020); *White*, 962 F.3d at 1054-55; *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995); *Gomez*, 16 F.3d at 256. For Fourth Amendment standing purposes, Defendant must prove he was in lawful possession of the Jaguar—meaning he must show the vehicle's renter gave him permission to drive it.

Here, Defendant failed to adduce any evidence regarding how he came into possession of the Jaguar. He did not present evidence as to his relationship (if any) with the renter, what permission (if any) the renter gave him to use and drive the vehicle, and who (if anyone) gave him possession of the car and/or its keys. *See White,* 962 F.3d at 1054 (concluding a lack of evidence as to who rented the car or whether the renter gave the driver permission to operate the vehicle meant the driver

11

had no standing to challenge the search); *Muhammad*, 58 F.3d at 355 (holding a defendant lacked standing to challenge a vehicle search where he "presented no direct evidence that [the lawful renter] had granted him permission to use the vehicle").

Defendant emphasizes there was no proof he knew the vehicle was reported stolen. *See* Doc. 298 at 8-9. However, for Fourth Amendment standing purposes, Defendant shoulders the entire burden of establishing he lawfully possessed the car, and he lacked any knowledge the car was stolen. *See United States v. Ostrum*, 99 F.4th 999, 1004 (7th Cir. 2024) (observing that "if [the driver] wanted to show that he was innocently driving the stolen [vehicle], he needed to offer evidence to that effect."). The burden of proof for Fourth Amendment standing does not shift to the Government. *Id*. at 1005. Here, the record is devoid of any facts showing Defendant was an unwitting or innocent driver of the Jaguar. In fact, there is no evidence in the record concerning how Defendant came into possession of the Jaguar, let alone whether that possession was lawful. *See also White*, 962 F.3d at 1054 (recognizing that although "there is no evidence that [the defendant] stole [the rental car] . . . there is also no evidence that he lawfully possessed it."). As such, the undersigned finds Defendant has not met his burden of showing he lawfully possessed the rental car, nor has he demonstrated he was an innocent driver, unaware of the vehicle's stolen status.

**b.    Cases Involving Stolen Vehicles**

If an individual is wrongfully present at the scene of a search, he cannot object to the legality of the search. *Byrd*, 584 U.S. at 409 (observing "[a] burglar plying his trade in a summer cabin during the off season . . . may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as legitimate.") (internal quotations and citation omitted). In cases involving stolen vehicles, federal appellate courts have consistently held there is no reasonable expectation of privacy in a stolen vehicle, regardless of the degree of possession and control displayed by the driver of the vehicle. *Byrd*, 584 U.S. at 409 (no degree of possession and control

of a stolen vehicle can create a reasonable expectation of privacy in that vehicle); *see also Ostrum*, 99 F.4th at 1004 (recognizing if a driver stole or otherwise knew a car was stolen, he would have no reasonable expectation of privacy in the vehicle or its contents); *United States v. Tropiano*, 50 F.3d 157, 161 (2d Cir. 1995) (holding "it [is] obvious that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car.").[18]

It is undisputed the Jaguar was not timely returned to EAN, it was reported to law enforcement as a "failure to return," and it was ultimately reported as a stolen vehicle. The Jaguar did not belong to Defendant, had not been rented to him, and there is no evidence how he came to possess it. If Defendant desired to show he was an innocent driver or had permission to drive the car, he was required to adduce evidence to that effect. Therefore, the undersigned recommends the Court find Defendant has no standing to challenge the search of the stolen Jaguar.

### (2) Standing to Challenge Search of the Backpacks

Defendant contends that even if he had no reasonable expectation of privacy in the Jaguar, he still had a reasonable expectation of privacy in a red backpack and white backpack inside the Jaguar and searched as part of the inventory search. Doc. 313 at 5-6. According to Defendant, officers conducting undercover surveillance of the residence previously observed Defendant using a red backpack on multiple occasions. *Id*. at 6. Defendant also contends the red backpack contained a prescription pill bottle with his name on it. *Id*. Although Defendant claims an expectation of privacy in the white backpack, he has offered no specific facts or arguments concerning his alleged ownership or interest in the white backpack.

---

[18] District courts in the Eighth Circuit have observed the same. *See United States v. Lukassen*, Case No. 8:20CR268, 2021 WL 4596356, at *7 (D. Neb. Sept. 10, 2021) (holding "individuals who possess stolen vehicles do not have legitimate expectations of privacy in those vehicles"), *report and recommendation adopted*, 2021 WL 4593850 (D. Neb. Oct. 6, 2021); *United States v. Monden*, Case No. CR16-0051, 2016 WL 4069880, at *6 (N.D. Iowa July 29, 2016) (observing "courts in other jurisdictions have stated unequivocally that a person in possession of a stolen vehicle has no standing to challenge a search of the vehicle"), *report and recommendation adopted*, 2016 WL 5928684 (N.D. Iowa Oct. 11, 2016), *aff'd sub nom.*, *United States v. Mosley*, 878 F.3d 246 (8th Cir. 2017).

Both backpacks were located inside the Jaguar and were searched when the stolen vehicle was towed. If Defendant cannot demonstrate he was lawfully present or in "lawful possession" of the rental vehicle, he also does not have standing to challenge the search of the vehicle's contents. *See*, *e.g.*, *United States v. Sawyer*, 929 F.3d 497, 500 (7th Cir. 2019) (concluding that a trespasser who could not show a legitimate privacy interest in a home has no standing to challenge a search of his backpack left inside the home); *Lukassen*, Case No. 8:20CR268, 2021 WL 4596356, at *7 (D. Neb. Sept. 10, 2021) (observing "[w]here an individual lacks standing to contest the search of a vehicle, courts have concluded that the individual likewise lacks standing to challenge the search of the contents of that vehicle."). A driver of stolen car has no reasonable expectation of privacy in the vehicle or its contents. *Ostrum*, 99 F.4th at 1005 (observing "[a] stolen car is not a safehouse that society is prepared to recognize as reasonable."); *see also United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981) (finding "[a] person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects."); *United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017) (holding that without an expectation of privacy in the vehicle, defendant lacked standing to challenge a search of the vehicle's trunk).

Accordingly, the undersigned recommends the Court find Defendant has not met his burden of showing Fourth Amendment standing to challenge the search of either backpack. If the Court were to find Defendant has Fourth Amendment standing to challenge the search of the vehicle or its contents, the remainder of the stop and search are analyzed below.

**B.      Reasonable Suspicion for the Investigatory Stop**

Defendant contends the October 21, 2020 traffic stop was pretextual and unconstitutional. Doc. 298 at 3-4. The Government argues the traffic stop was constitutional and adequately supported by reasonable suspicion. Doc. 309 at 7-8. "A traffic stop constitutes a seizure under the Fourth Amendment and must be supported by either reasonable suspicion or probable cause." *United States*

14

*v. Foster*, 15 F.4th 874, 877 (8th Cir. 2021) (citation omitted). Traffic stops are constitutional when officers observe a traffic violation, or when particularized objective information creates reasonable suspicion that a crime is being committed. *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (citation omitted); *Mosley*, 878 F.3d at 251.

"A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrants suspicion that a crime is being committed." *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (citation omitted). Reasonable suspicion requires more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause. *United States v. Sanchez*, 955 F.3d 669, 674-75 (8th Cir. 2020). Further, the likelihood of criminal activity necessary to establish reasonable suspicion "falls considerably short of [that necessary to] satisfy[] a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

To determine if there was sufficient reasonable suspicion for officers to conduct an investigatory stop, courts look at "what the officers 'reasonably knew at the time'" and "the totality of the circumstances, allowing officers to draw on their experience and training." *Hanel*, 993 F.3d at 543; *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (citation omitted). An officer's "subjective intent is not determinative in deciding whether the stop was reasonable." *Hanel*, 993 F.3d at 543-44 (quoting *United States v. Mallari*, 334 F.3d 765, 767 (8th Cir. 2003)). Relevant here, the Eighth Circuit has held an individual who is reasonably suspected of operating a stolen vehicle may be subjected to an investigatory stop. *United States v. James*, 52 F.4th 1035, 1037-38 (8th Cir. 2022) (citing *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015)).

Sometime before October 21, 2020, KCPD officers were informed EAN rented the Jaguar to a female in Omaha, the vehicle was not rented to Defendant, and the vehicle was not returned as

scheduled. On October 21, 2020, at approximately 11:19 a.m., officers learned the Jaguar was reported stolen earlier that morning. KCPD's computer system confirmed the Jaguar had been reported stolen. At approximately 11:40 a.m. the same day, officers observed Defendant exit the passenger side of the Jaguar and get into the driver's seat. They then observed Defendant drive the vehicle to the area of East 73rd Street and Flora.

Based on the information obtained during their investigation, the officers had a reasonable suspicion Defendant was committing the crime of tampering in the first degree because he was operating or possessing a vehicle without the owner's consent. In Missouri, an individual commits the offense of tampering in the first degree if he "knowingly . . . possesses, . . . or unlawfully operates an automobile . . . without the consent of the owner thereof." Mo. Rev. Stat. § 569.080.1(2). The undersigned finds that once the officers learned of and confirmed the stolen status of the Jaguar, the officers, at a minimum, had reasonable suspicion to believe Defendant was committing the crime of tampering and had reasonable suspicion to initiate the traffic stop of the confirmed stolen vehicle.

## C.    Defendant's Arrest

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Finley*, 56 F.4th 1159, 1165 (8th Cir. 2023) (citation omitted). Defendant avers his arrest was pretextual and not supported by probable cause. Doc. 298 at 4-9. The Government argues Defendant's arrest was supported by probable cause. Doc. 309 at 5-8.

### (1)    Probable Cause Standard

"[P]robable cause exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Brooks*, 982 F.3d 1177, 1180 (8th Cir. 2020) (citation omitted). "The [probable cause] standard is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v.*

16

*Edwards*, 891 F.3d 708, 711 (8th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

Officers do not have to "witness actual criminal activity" nor are they required to "have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013) (citation omitted). "To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest" and analyze whether the facts, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). "In making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing from factual circumstances. *Winarske*, 715 F.3d at 1067 (internal quotation and citation omitted).

There must be probable cause for all elements of a crime, including mens rea. *See Finley*, 56 F.4th at 1165. However, officers are not required to "establish the elements of the offense with a level of certainty as though trial-level proof exist at the side of the road." *Brooks*, 982 F.3d at 1180 (citation omitted). Since "an officer cannot be certain of a suspect's mens rea at the time he or she commits the crime, an officer can rely on the implications of the information known to him when assessing whether a suspect possessed the state of mind required for the crime." *Finley*, 56 F.4th at 1165 (citation and internal quotations omitted).

**(2)       Probable Cause for Defendant's Arrest**

Defendant contends officers did not have probable cause to arrest him for tampering in the first degree because there was no evidence he "knowingly" possessed or operated the Jaguar without the owner's consent. Doc. 298 at 6-9; *see also* Mo. Rev. Stat. § 569.080.1(2). He argues there were no "telltale signs" the Jaguar was stolen – i.e., the steering column was not broken, the windows were not broken, and he had the vehicle's key. *Id*. Without evidence establishing Defendant knew

17

the Jaguar was stolen or linking him to the actual theft of the vehicle, Defendant maintains law enforcement did not have probable cause to arrest him for tampering in the first degree. *Id.*

Defendant relies on *State v. Presberry,* 128 S.W.3d 80 (Mo. Ct. App. 2003), and *In Interest of V.L.P*, 947 S.W.2d 546 (Mo. Ct. App. 1997). Doc. 298 at 6-7. In both cases, the Missouri Court of Appeals reversed tampering convictions based on insufficient evidence proving the defendant knew the vehicle the Defendant was operating was stolen. *In Interest of V.L.P.*, 947 S.W.2d at 548; *Presberry*, 128 S.W.3d at 96-98. Neither case involved an analysis of reasonable suspicion or probable cause to effectuate an arrest for tampering. Defendant confuses the standard necessary for officers to arrest him for tampering (probable cause) with the standard necessary to convict him of tampering (proof beyond a reasonable doubt). "Probable cause exists under the Fourth Amendment when a police officer has reasonably trustworthy information that is sufficient to lead an objectively reasonable person to believe the suspect has committed or is committing a crime. *United States v. Thabit*, 56 F.4th 1145, 1151 (8th Cir. 2023) (citation omitted). Probable cause "means more than a bare suspicion, less than necessary for conviction." *Id*. Officers conducting a warrantless arrest are not required to "have collected enough evidence so as to justify a conviction." *Winarske*, 715 F.3d at 1067 (citation omitted). Further, "[i]n making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *Id*. (citation and internal quotations omitted).

Defendant's contention that the officers lacked probable cause to arrest him because they did not know whether he was aware the vehicle was stolen is without merit. Here, a rental agency owned the Jaguar, and it was rented out to an individual who is not Defendant, and with no known connection to Defendant. It was due to be returned on September 9, 2020, but it was never returned. It was reported as a failure to return on September 29, 2020, and as stolen on October 21, 2020. Prior to October 21, 2020, officers conducting undercover surveillance in a narcotics investigation

18

observed Defendant operate the Jaguar on multiple occasions. On October 21, 2020, officers confirmed the Jaguar had been reported as stolen to the Omaha PD.

After the officers confirmed the Jaguar's stolen status, the vehicle left the residence, and the officers followed it. The officers observed Defendant exit the Jaguar's passenger side and enter the driver's side. They then followed Defendant as he drove the vehicle to East 73rd Street and Flora. Defendant was driving the Jaguar when officers stopped and arrested him. It was not necessary for the officers to develop trial-ready proof of the mens rea element prior to the arrest. *See*, *e.g.*, *Brooks*, 982 F.3d at 1180; *Winarske*, 715 F.3d at 1067. At the time of the arrest, it was reasonable for the officers to infer the driver of a stolen vehicle had committed or was committing an offense. *See Brooks*, 982 F.3d at 1180.[19]

The undersigned finds the facts and circumstances known to the officers at the time of Defendant's arrest were sufficient for them to reasonably believe he was knowingly operating a vehicle without permission from its owner. Applying the probable cause standard, which requires only a probability or substantial chance of criminal activity, the undersigned recommends the Court find officers had probable cause to arrest Defendant for tampering in the first degree.[20]

**D.     Whether the Stop and Arrest were Pretextual**

Defendant avers his stop and arrest were unconstitutionally pretextual. Doc. 298 at 2-6. He claims officers did not know whether he had knowledge of the vehicle being stolen, and law

---

[19] Defendant seems to argue it is categorically unlawful to arrest an occupant of a suspected stolen vehicle that has no indicia of theft (glass breakage, broken steering column) for tampering under Missouri law because officers cannot establish the driver "knew" the vehicle was stolen. This type of argument, however, was rejected by the Eighth Circuit in *Brooks* in light of the differences between trial proof and the information necessary for a probable cause determination at the time of the stop or arrest. *Brooks*, 982 F.3d at 1180.

[20] The Government argues officers also had probable cause to arrest Defendant for tampering in the second degree. Doc. 309 at 6. "A person commits the offense of tampering in the second degree if he or she . . . [u]nlawfully rides in or upon another's automobile . . . ." Mo. Rev. Stat. § 569.090.1(2). While the facts and circumstances are likely sufficient for probable cause to arrest Defendant for tampering in the second degree, this report and recommendation focuses on probable cause for tampering in the first degree because Defendant specifically challenges it, and the Jaguar was towed as a stolen automobile used in the commission of tampering with a motor vehicle in the first degree.

19

enforcement's decision to wait to stop the vehicle suggests the stop was a front or pretext to search Defendant's backpack located inside the vehicle. Doc. 298 at 3-4. The Government avers Defendant's stop and arrest were not pretextual. Doc. 309 at 7. The Government further asserts that even if law enforcement had an ulterior motivation to conduct the stop and arrest, both actions were adequately supported by reasonable suspicion and probable cause. *Id*. at 7-8.

**(1)     Stop of the Vehicle**

Pretextual traffic stops violate the Fourth Amendment. *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016). However, the officer's subjective intent in making the stop does not affect the Fourth Amendment analysis. *See United States v. Rutledge*, 61 F.4th 597, 601 (8th Cir. 2023); *Gerling v. City of Hermann, Mo.*, 2 F.4th 737, 743 (8th Cir. 2021).

**a.     Defendant's Knowledge the Jaguar was Stolen**

Defendant avers the stop was pretextual because officers learned of the Jaguar's stolen status only minutes before they arrested him and there were no outward signs suggesting Defendant knew the Jaguar was stolen – i.e., no broken steering column, no broken windows. Doc. 298 at 3-4. But as detailed herein, the Jaguar was not returned to the rental agency on September 9, 2020, and had been previously reported as a failure to return on September 29, 2020, nearly a month before it was officially reported as stolen. Officers also observed Defendant and codefendant Valdivia driving this vehicle during surveillance in an ongoing narcotics investigation. The officers did not effectuate a stop until receiving official confirmation the car was reported stolen. The timing of their actions was reasonable.

Further, as noted above, Defendant confuses the standard necessary for officers to conduct an investigatory stop (reasonable suspicion) with the standard necessary to convict a defendant of tampering in the first degree (proof beyond a reasonable doubt). For an investigatory stop, officers only need to have a reasonable suspicion that criminal activity is afoot based on objective facts and

20

rational inferences from those facts. *Williams*, 929 F.3d at 544. Defendant's knowledge, or lack thereof, about the stolen status of the vehicle, while perhaps relevant at a trial for tampering with a motor vehicle, is not a dispositive factor for an analysis of reasonable suspicion. *See James*, 52 F.4th at 1038 (recognizing "[r]easonable suspicion to initiate a *Terry* stop, like probable cause to arrest or search, does not require officers to establish the elements of the offense with a level of certainty as though trial proof must exist at the side of the road.") (internal quotations and citation omitted).

In *James*, the Eighth Circuit found an officer had reasonable suspicion to conduct an investigatory stop of a vehicle based on several factors, including the vehicle matched the description of a vehicle the officer knew was listed as stolen on a stolen vehicles report. *Id*. Here, the officers did not need to observe any "outward signs" suggesting the Jaguar was stolen because they confirmed its stolen status in KCPD's computer system before conducting the investigatory stop. Because the officers confirmed the Jaguar was stolen, and for the reasons set forth in *supra*, section III(B), the undersigned recommends a finding that the officers had at least a reasonable suspicion to perform an investigatory stop. Further, the undersigned recommends a finding that the absence of "outward signs" indicating the Jaguar's stolen status inconsequential to the reasonable suspicion analysis.

### b. Officers Waiting to Conduct the Stop

Defendant also argues the officers' decision to wait for the female driver, who operated the Jaguar immediately prior to Defendant, to exit the Jaguar and Defendant to get in the driver's seat before conducting the stop evidenced unconstitutional pretext. Doc. 298 at 4. During the evidentiary hearing, Detective Straubel testified he did not know Defendant was inside the Jaguar until the vehicle stopped near 74th and Main Street in Kansas City, Missouri, and Defendant exited the Jaguar's passenger side. Detective Straubel stated a traffic stop was not conducted while the female was driving because he was acting in a covert capacity, and tactical officers had not yet arrived. He

explained that when he is acting in a covert capacity, he generally does not conduct traffic stops or effectuate arrests because he is not properly equipped, in uniform, or in a police car with lights or sirens. According to Officer Kuehl, officers acting in a covert capacity contact tactical officers conduct traffic stops and effectuate arrets. The undersigned finds the testimony of both officers was credible and uncontroverted by any other evidence.

Further, Defendant cannot complain about the timing of the stop or his arrest. Once officers possess probable cause to arrest, they are not required to do so at a particular time or a particular location. *Hoffa v. United States*, 385 U.S. 293, 310 (1966); *United States v. Johnigan*, 90 F.3d 1332, 1337 (8th Cir. 1996). Here, the officers' actions and the timing of the vehicle stop were reasonable.

Additionally, any subjective intentions of the officers that related to their narcotics investigation do not negate the investigative traffic stop of the Jaguar because the stop was supported by reasonable suspicion and otherwise constitutionally valid. *See Wren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Clarke*, 110 F.3d 612, 613 (8th Cir. 1997). Based on the information the officers reasonably knew at the time and the totality of the circumstances, the undersigned recommends a finding that the stop of the Jaguar was supported by reasonable suspicion and constitutionally valid and was not pretextual or unreasonable under the Fourth Amendment.

### (2)     Officers' Subjective Intentions and Validity of Arrest

Defendant argues his arrest was a "front or an excuse" to search his backpacks, which would have been otherwise illegal.[21] Doc. 298 at 4. Officers' "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and they "cannot invalidate police conduct justified by probable cause." *Wren*, 517 U.S. at 813; *Clarke*, 110 F.3d at 613 (citation omitted).

---

[21] Defendant also contends officers chose not to arrest the female driver because they wanted to arrest him and search his backpacks. Doc. 298 at 4, 6. As specified *supra*, section III(B)(2)(b), officers decided not to stop the female driver because they were undercover and were waiting for tactical officers to arrive.

The Eighth Circuit has observed this principle "is applicable to all police activities," including arrests, "for which probable cause is required." *Clarke*, 110 F.3d at 613-14 (citation omitted)).

Based on the undersigned's finding of sufficient probable cause for Defendant's arrest, *see supra*, section III(C)(2), the undersigned finds any subjective intentions held by the officers do not invalidate the Defendant's arrest. Accordingly, the undersigned recommends the Court conclude Defendant's arrest is valid and unaffected by any alleged subjective intentions of officers.

**E.     Search of the Backpacks**

In his reply, Defendant argues for the first time that because KCPD's tow policy did not provide guidance to officers when there is not probable cause to arrest a driver of a stolen car, the search of Defendant's backpacks was illegal. Doc. 313 at 6-10. As addressed above, the undersigned recommends a finding that the stop and arrest of the Defendant were reasonable under the Fourth Amendment. Further, the undersigned recommends a finding that the subsequent inventory search was also reasonable.

Generally, a search conducted without a warrant is unreasonable; however, an inventory search is one exception to the warrant requirement. *United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020) (citation omitted). "An inventory search must be reasonable under the totality of circumstances," and "law enforcement may not use an inventory search as a ruse for general rummaging to discover incriminating evidence." *Id*. (citations omitted). An inventory search is reasonable when it is conducted according to standardized police procedures, such as a tow policy, which removes the inference that police used an inventory search as a general means of discovering incriminating evidence. *Id*. (citing to *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013)).

According to KCPD's Tow Policy, when a vehicle is towed pursuant to a custodial arrest, officers must perform a "*complete* content inventory of the interior, engine compartment, and trunk . . . to prevent any article of valuable property from being overlooked." Gov't Ex. 4 at B-1 (emphasis

23

added). A "content inventory" is defined as a "detailed inventory and listing of items located inside of a vehicle being towed . . . ." Gov't Ex. 4 at 1. "A content inventory will occur only after members have made a determination to tow the property." Gov't Ex. 4 at 1. Further, when permitted by policy, "[a] content inventory allows the opening of locked compartments and containers to determine content." Gov't Ex. 4 at 1. When there is a content inventory performed after custodial arrest, the policy requires a complete content inventory including locked and/or closed compartments and containers. Gov't Ex. 4 at B-1. Because KCPD's Tow Policy allows for officers to open containers found in a vehicle pursuant to a driver's arrest, the undersigned recommends the Court find the search of the backpacks was reasonable and legal.[22]

## F.     Fruit of the Poisonous Tree

Defendant contends all evidence from the inventory search should be suppressed as fruit of the poisonous tree because there was no probable cause for his arrest, and his arrest was unconstitutionally pretextual. Doc. 298 at 9-10. Because the undersigned recommends the Court find there was probable cause for Defendant's arrest and the tow policy allowed an inventory search, the evidence seized from Jaguar need not be suppressed under the exclusionary rule. *See United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023) (citation omitted) (holding the exclusionary rule "extends to evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'") (citation omitted).

## IV.     CONCLUSION

Based on the foregoing, it is

---

[22] The undersigned is aware of the Eighth Circuit's analysis of the search of a stolen vehicle pursuant to the automobile exception in *United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023) (holding the automobile exception allows officers to search a stolen vehicle for evidence of it being stolen). While the automobile exception may be applicable in this matter, neither party raised it, nor did the officers testify that they relied on it as a basis for the Jaguar's search. Accordingly, the undersigned does not analyze the automobile exception herein.

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's motion to suppress evidence (Doc. 298).

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

**IT IS SO ORDERED.**

DATE: May 22, 2024              */s/ W. Brian Gaddy*
                                          W. BRIAN GADDY
                                          UNITED STATES MAGISTRATE JUDGE